## BLACK ET AL. *v.* UNITED STATES.

Where a contract provides for the transportation of military stores and supplies from certain posts, dépôts, or stations, or from and to any other posts, dépôts, or stations, that might be established within a described district, or from one point to another within the route, — *Held*, that Fort Phil. Kearney, being a military post, although not specifically named in the contract, nor established after the date thereof, was "a point" where the contractor was required to receive military stores and supplies for transportation to another point within the route, and that he was entitled to payment under the contract and at the rates therein mentioned for the distance they were actually carried, but not to additional compensation for the travel of his unloaded teams in reaching that fort.

APPEAL from the Court of Claims.

A contract was entered into between the United States and the claimants for the transportation of military stores and supplies on Route No. 1, west of the Missouri River, the material provisions of which are as follows : —

"ARTICLE 1. That the said Black, Kitchen, & Martin shall receive at any time, in any of the months from April 1, 1868, to March 31, 1869, inclusive, from the officers or agents of the quartermaster's department at Fort D. A. Russell, in the Territory of Dakota, or such point as may be determined upon during the year on the Omaha branch of the Union Pacific Railroad, west of Fort D. A. Russell, or at Fort Laramie, Dakota Territory, all such military stores and supplies as may be offered or turned over to them for transportation, in good order and condition, by the officer or agent of the quartermaster's department, at any or all of the above points or places, and transport the same with despatch, and deliver them in like good order and condition to the officer or agent of the quartermaster's department on duty or designated to receive them at any of the posts or dépôts that are now or may be established in the State of Nebraska, west of longitude 102 degrees; in the Territory of Montana, south of latitude 47 degrees; in the Territory of Dakota, west of longitude 104 degrees; in the Territory of Idaho,

east of longitude 114 degrees; and in the Territories of Utah and Colorado, north of latitude 40 degrees, including, if necessary, Denver City, or at any other points or posts on the route, agreeably to the instructions they may receive from the officer or other authorized agent of the quartermaster's department charged with the duty of forwarding the stores and supplies at Fort D. A. Russell or other place of departure; and for the faithful performance of such service they shall be paid in the manner hereinafter provided for in Art. XVII. of this agreement, and at the rates specified and shown in the tabular statement hereto annexed and signed by the parties to this agreement, which statement is considered as part hereof.

"ART. II. That the said Black, Kitchen, & Martin agree and bind themselves, their heirs, executors, and administrators, to transport under this agreement, from the posts, dépôts, or stations named in Art. I., or from and to any other posts, dépôts, or stations that may be established within the district described in said article, any number of pounds of military stores and supplies from and between one hundred thousand pounds and twenty-five millions of pounds in the aggregate.

"ART. XIV. It is understood that if at any time stores or supplies are required to be transported back to any point on the road, or to any of the original points of departure, or from one point to another within the route, they shall be carried upon the same terms and conditions as herein provided.

"ART. XVII. For and in consideration of the faithful performance of the stipulations of this agreement, the said Black, Kitchen, & Martin shall be paid at the office of the quartermaster's department at Omaha, Nebraska, in the legal currency of the United States, according to the distance supplies are transported, and agreeably to the rates specified in the tabular statement hereto annexed, signed by the parties to this agreement."

In order to execute a requirement of the quartermaster's department for the removal of stores from Fort Phil. Kearney, the claimants, having no teams at that post, were obliged to send them there from Fort D. A. Russell and Fort Fetterman. To recover $55,530 as compensation for the distance thus travelled, this action was brought.

The petition was dismissed by the court below.

*Mr. C. F. Peck* for the appellants, and *Mr. Assistant Attorney-General Edwin B. Smith* for the United States.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

The transportation for which compensation is now asked was "from one point to another within the route;" and full payment has been made therefor "according to the distance the supplies were transported, and agreeably to the rates specified in the tabular statement."

It is claimed, however, that as Fort Phil. Kearney, the point at which the supplies were received for transportation, "was within the route," the contractors are entitled to compensation for the distance their teams travelled unloaded to reach that place, as well as for the distance the supplies were carried. This claim is based, not upon any express provision in the contract requiring or even permitting such payment, but because, as is insisted, the service rendered was not included in the obligations of the contract. The argument is, that the places named in Art. I. are the only places at which the contractors were bound to receive the supplies to be transported. But this excludes from consideration Arts. II. and XIV., by which the contractors bound themselves not only to transport under the agreement from the posts, dépôts, and stations named in Art. I., but also "from and to any other posts, dépôts, or stations that might be established within the district described in said article," and "from one point to another within the route." For the purposes of construction, we must look to the whole instrument. The intention of the parties is to be ascertained by an examination of all they have said in their agreement, and not of a part only.

In *Caldwell's Case*, 19 Wall. 264, we decided that the terms "posts, dépôts, or stations," as used in Arts. I. and II. of his contract, "in the presence of actual war, and in reference to military stores," included military posts and stations alone. Consequently, it was held that Caldwell could not claim the right of transporting supplies from railroad stations within the district which were not at the same time military posts, stations, or dépôts. In the present case, the starting-point was Fort Phil. Kearney, a military "post," and, consequently, a "point" within the district at which the contractor could, under the ruling in *Caldwell's Case*, be required to receive

stores and supplies for transportation. It is a noticeable fact, though perhaps under the circumstances of this case unimportant, that the provision for transportation " from one point to another within the route " in Art. XIV. of this contract, which was for 1868–69, is not in Caldwell's contract. The latter was for the year 1866. It is not impossible that the claim made by him may have suggested the necessity for this change in the terms of such agreements. In his contract, too, Art. I. provided that stores should be received for transportation " at any points or places at which posts or dépôts shall be established." Here the same article provided that they should be received " at such point as may be determined upon during the year, on the Omaha branch, &c.," omitting the further provision that it should be a " post " or " dépôt."

We are clearly of the opinion that the services rendered by these appellants were within the requirements of their contract, and that the only compensation they are entitled to is for the distance the articles were actually carried, and agreeably to the rates specified. 　　*The judgment is affirmed.*